## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

**PAMELA JENKINS**                          )
                                            )
      Plaintiff,                            )
**v.**                                      )          Civil Action No:_____
                                            )
                                            )
**TRANS UNION, LLC**                        )
                                            )
                                            )
      Defendant.                            )

## COMPLAINT

Plaintiff Pamela Jenkins, by and through counsel, brings this Complaint against Defendant Trans Union, LLC. ("Defendant" or "Trans Union") on the grounds and in the amounts set forth herein:

### Preliminary Statement

1.      Trans Union has been on notice from consumers, lawyers and judges that its failure to properly process and handle consumer claims of identity theft and fraud, violate the FCRA. Rather than take such claims seriously and conduct thorough and searching inquiries by properly trained dispute processors, Trans Union systematically outsources these investigations and disputes to third-party processors that are not properly trained, supervised, or monitored. Based upon information, belief and sworn testimony from corporate representatives and managing agents, these outsourced processors at Teleperformance are not authorized or empowered to block or suppress identity theft/fraud accounts. In an effort to cover up for their failures, if a consumer fails to attach a police report with their disputes (which the corporate representative admits is not required under §1681i), Trans Union claims that if only the consumer had attached a police report to his/her dispute it would have automatically deleted or blocked the disputed account. This case

exposes the reality of the situation that no matter whether a consumer files a police report or an FTC Identity theft report, Trans Union is not going to block/delete the trade line and instead is going to provide some excuse for not doing so. Trans Union persistently refuses to produce in discovery the actual materials used to train these third-party processors to avoid revealing that they are only trained as Tier-1 processors and Tier-1processors are not authorized to delete/suppress/block fraudulent account data. Mrs. Jenkins sent all the required documentation to Trans Union to comply with the mandatory blocking requirement under §1681c-2(a), yet the processors failed to block or correct it. Instead, the processor(s) invoked the exception provisions set forth in §1681c-2(c) and issued form letters that told Mrs. Jenkins that it was not going to block it because she is a liar and that she actually received the services or goods. Based upon information and belief, once Trans Union is forced to actually produce the materials used to train these third-party processors, that it will be revealed that they are trained to issue the letters pursuant to §1681c-2(c) and not take any actions that will result in blocking/deletion/suppression of the disputed account. Accordingly, Mrs. Jenkins requests an award of actual damages, statutory damages, punitive damages, attorney's fees and costs based upon TransUnion's violations of the Fair Credit Reporting Act 15 U.S.C. §1681 *et seq.*

### Parties

2.      Plaintiff Pamela Jenkins is a "person" and "consumer" as defined by the FCRA at 15 U.S.C. §1681a(b) and (c) because she is an individual. Unless otherwise specifically stated herein, the term "Plaintiff" shall refer to Pamela Jenkins.

3.      Defendant TransUnion LLC, (hereinafter "TransUnion"), is a foreign limited liability company with a principal office address in Illinois. TransUnion is a consumer reporting agency, as defined in section 1681(f) of the FCRA, regularly engaged in the business of

assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties. TransUnion regularly conducts these business activities in the Eastern District of Virginia by providing credit reports and other products to consumers and businesses in the Alexandria division of the Eastern District of Virginia.

## Jurisdiction & Venue

4.      This court has jurisdiction pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681(p).  Venue is proper in this jurisdiction.  Plaintiff resides in the Alexandria Division of the Eastern District of Virginia and that forum is the forum most convenient for the adjudication of her claims.

## Factual Allegations

5.      Mrs. Jenkins has been dealing with fraud issues related to a Citibank/Best Buy credit card account that was taken over by a thief with charges made on the account without her authority or permission after Mrs. Jenkins had paid the account in full and instructed that the account be closed.  Mrs. Jenkins diligently took actions to protect herself, but she is left with an inaccurate TransUnion credit file through no fault of her own.

6.      On August 19, 2022, Mrs. Jenkins received an email that the email address for her Citibank/BestBuy account had been updated to an email address that she did not recognize and that she would no longer receive email communication about the account to her actual email address.

7.      On August 19, 2022, after receiving the email that her email address had been updated to an unrecognized email address, Mrs. Jenkins telephoned Citibank and told them that

she did not request the change of the email address, and that Citibank should close the account down immediately.

8.     Mrs. Jenkins confirmed the total balance owed on the account at that time, and she told Citibank that she was headed to Best Buy to pay off the balance and destroy the physical Citibank/BestBuy credit card.  She requested the account closed and wanted no further business with CitiBank/Best Buy because she did not feel they kept her credit line secured.

9.     That same day on August 19, 2022, Mrs. Jenkins went to her local Best Buy store in Leesburg, and she tendered a check in the amount of $667.48, which was the amount confirmed by Citibank to pay the account off and to close the account.  She requested the Best Buy employee to process the check now and to close the account immediately.  She made clear that she would no longer have any association with Best Buy or CitiBank after closing this account.

10.     Later on, August 19, 2022, Mrs. Jenkins received a text message from My Best Buy CitiAcct asking her if she attempted a $2,530 purchase at Acer Service Company on 8-19.  Mrs. Jenkins texted 2 which was the code to indicate NO.  She then received a text to open a fraud dispute with Best Buy Citi Fraud Department at 844-311-6031.  Mrs. Jenkins phoned CitiBank again to inform it once again of the fraud and the suspicious activity.

11.     Next, Mrs. Jenkins received texts on or about September 8, 2022, October 7, 2022, and November 17, 2022 that Citi Retail service mail about the account had been returned.  Mrs. Jenkins would contact CitiBank by phone and continue to describe the problem, the fraud, and that she had never moved.  She asked them what she needed to do to make them listen to her.

12.     Prior to the fraud, the last four digits of the Citibank/Best Buy account was 7230.

13.     On or about December 17, 2022, Mrs. Jenkins received a letter from CitiBank Early Warning/ Fraud Verification Unit regarding an account with the last four digits 1844, which was

a new account number with a $6,000.00 credit limit that had been upgraded to a Platinum Card account.  She had never requested the upgrade and had instructed Citibank to close the account in August 2022 and thereafter.

14.     From January 2023 through February 2023, Mrs. Jenkins received numerous calls and contacts about address changes and late fees for the Citibank account.

15.     In February of 2023, Mrs. Jenkins received a statement at her address for an unknown charge on the account that she had instructed CitiBank to close in August 2022. During her calls with CitiBank, it claimed that she had phoned in, reported the card lost or stolen, and made a request to send a new card to another address.  Citibank even changed the account number once again to the last four digits ending in 8422.

16.     Despite the fact that she had notified CitiBank of the fraudulent change to her email address, that the initial charge in August 2022 was fraudulent, that she wanted the account closed and that she notified the card issuer (Best Buy) to close the account, CitiBank allowed a fraudster to obtain a new card, change the mailing address and increase the card to platinum with a $6,000 credit limit.

17.     Mrs. Jenkins took all the information and went to the local Best Buy store to demand an explanation.  The local store told her to go to the police station to file an identity theft report.

18.     On or about February 22, 2023, Mrs. Jenkins filed a police report with the Town of Leesburg Police Department.

19.     The police report that Mrs. Jenkins filed with Town of Leesburg Police Department (herein after the "Leesburg Police Report") met all of the requirements for an identity theft report as defined by the Fair Credit Reporting Act.

20.     The Leesburg Police Report contained Mrs. Jenkins' consumer identification information including name, address, and phone number.

21.     The Leesburg Police Report contained the name/and or badge number of the officer or law enforcement personnel that processed the report: Officer Wakeham.

22.     The Leesburg Police Report identified the date that the report was filed.

23.     The Leesburg Police Report identified the case number: 2022-32218.

24.     The Leesburg Police Report identified the violation and offense description: Identity Theft & Wire Fraud, theft of $2,687 on Best Buy Credit.

25.     The Leesburg Police Report identified the name of the law enforcement entity: Town of Leesburg Police.

26.     The Leesburg Police Report was in the form that is recognized as consistent for that jurisdiction entity because it was an official form with the seal of the Leesburg, Virginia police.

27.     On or about February 21, 2023, Mrs. Jenkins contacted TransUnion and requested that TransUnion add an initial fraud alert to her credit file.  Mrs. Jenkins also notified TransUnion of the problem related to the account takeover of the Citibank/BestBuy account.

28.     TransUnion issued an ACDV dated February 21, 2023, to Citibank.  In the consumer message information TransUnion's representative typed the following information: "consumer said she closed the account because she closed the account she never buy anything from bestbuy."  Based upon information and belief, the representative that typed this consumer message did not convey all of the relevant information on the ACDV that Mrs. Jenkins had stated during the phone call because the typed message is incoherent and not reflective of what Mrs. Jenkins' would have communicated.  TransUnion has a history of outsourcing telephone disputes to processors located outside of the United States.  These processors are not directly employed by

6

TransUnion and history has shown the processors fail to comply with requirements for their position. TransUnion does not directly monitor or control these employees and takes no action to remove incompetent workers acting on its behalf.

29.     The outsourced processor company (Teleperformance) conducts periodic tests to see how the processors are doing, but if they fail to meet the proscribed standards, there is no evidence that they are subjected to correction or discipline.

30.     On March 6, 2023, Citibank responded to the ACDV by updating the account and stating that the account and past due balance was Mrs. Jenkins' responsibility.

31.     On March 7, 2023, TransUnion repeated Citibank's response and notified Mrs. Jenkins that the investigation results were that TransUnion verified the account as accurate and updated the account. Based upon information and belief, no human, TransUnion employee or outsourced Teleperformance agent reviewed the Citibank ACDV response, compared it to the information provided in the dispute letter and thereafter determined that TransUnion could verify that the account should remain on the Plaintiff's credit file.

32.     On March 10, 2023, Mrs. Jenkins' telephoned TransUnion again and once again disputed the Citibank/Best Buy account. Mrs. Jenkins also updated her address information so that TransUnion would have the correct address information. She never lived in Colorado, which based upon information and belief, is where the fraudulent address associated with the Citibank account was reported by TransUnion. The improper Colorado address was a key fact to corroborate the identity theft, and TransUnion ignored the Colorado address because of its total reliance and parroting of the furnisher.

33.     TransUnion issued another ACDV after Mrs. Jenkins telephone call and typed as the consumer message "The account was never paid late The consumer paid on time." Based upon

information and belief, TransUnion's third-party processor once again did not communicate all the relevant information in dispute regarding the Citibank/BestBuy account. Mrs. Jenkins would have stated that she paid the account in full when alerted of the initial threat, closed the account, and thereafter a thief and imposter re-opened the account to incur additional charges that she was not responsible for making on the account. As with the first telephone dispute, TransUnion employed outsourced workers to handle telephone calls of this nature, and the agent did not communicate the full and complete information on the ACDV that was issued on TransUnion's behalf.

34.     On March 23, 2023, Citibank responded to the ACDV by updating the information related to the account. TransUnion undertook no additional analysis of the information and simply allowed the inaccurate data to remain on Mrs. Jenkins' credit profile. Based upon information and belief, no human, TransUnion employee or Teleperformance agent reviewed the Citibank ACDV response, compared it to the information provided in the dispute and thereafter determined that TransUnion could verify that the account should remain on the Plaintiff's credit file.

35.     On March 24, 2023, TransUnion issued the results of the reinvestigation to Mrs. Jenkins by stating that the disputed information was updated, and that other information regarding the account was updated. As is TransUnion's practice, it simply ignored the information provided by Mrs. Jenkins as part of the telephone conversation and repeated exactly what the furnisher Citibank instructed TransUnion to credit report about the account.

36.     Next, Mrs. Jenkins sent TransUnion a written credit dispute letter with supporting documentation. The letter once again told TransUnion that she was the victim of a fraud where an imposter took over her Citibank/Best Buy account after she had paid the account in full and closed the account. She noted that data maintained by TransUnion in the payment history showed a zero balance from September 2022 through October 2022 with the fraudulent balance starting in

November 2022. The letter went on to state that she told Citibank/Best Buy all of this when the identifying information for the account changed, and she included a copy of an email that corroborated this position.

37.     The letter also clearly stated that she filed a police report and that she received a report verification form from the Town of Leesburg Police Department:

> I went to the Town of Leesburg Police Department, and I filed a police report. I am not able to obtain a copy of the police report. All I received was a report verification form that states, "The Leesburg Police Department does not release police incident reports unless so ordered by a court." I have included the report verification form with this letter, so you can contact Officer Wakeham.

38.     The April 25, 2023 credit dispute package included a copy of the police report verification form. The police report verification form met all the qualifications of a valid identity theft report as defined by the Fair Credit Reporting Act as previously detailed in the Plaintiff's statement of facts.

39.     TransUnion corporate designees represent under oath in deposition that TransUnion deletes identity theft related accounts if the consumer provides a police report.

40.     TransUnion received a copy of Mrs. Jenkins' April 25, 2023, credit dispute letter and supporting documents on May 1, 2023.

41.     Rather than immediately block or suppress the Citibank account from Mrs. Jenkins's credit report as TransUnion claims to do under oath after it receives a police report related to identity theft, TransUnion had another ACDV issued on its behalf on May 3, 2023 by Vishal Gupta of third-party, outsourced vendor Teleperformance.

42.     TransUnion received a second copy of Mrs. Jenkins' April 25, 2023, credit dispute package via certified mail on May 4, 2023. TransUnion did not delete or suppress the Citibank account after receiving the certified mail version of the credit dispute package either.

43.     Next, TransUnion sent Mrs. Jenkins a letter essentially calling her a liar for requesting TransUnion to delete the Citibank account when TransUnion sent her a letter dated May 8, 2023 that stated in part:

> In accordance with Section 605B of the FCRA, we have determined that your request has either a) been made in error; b) is a misrepresentation of material fact relevant to the request to block and/or c) you have obtained possession of goods, services or money as a result of the transaction issue.
>
> Although we cannot process your request for the reasons stated above, you may submit additional information or documentation supporting your request. Additionally, we have opened a reinvestigation of the disputed information. TransUnion will contact the source of the disputed information to advise them of your dispute. We will ask them to verify the accuracy of the reported information. When the reinvestigation is completed, you will receive the results of that reinvestigation by mail.

44.     In the May 8, 2023 results of reinvestigation letter, TransUnion did not notify Mrs. Jenkins that there was any problem with the form of the Report Verification Form that she attached from the Town of Leesburg Police Department.

45.     TransUnion represented in the May 8, 2023, letter that Mrs. Jenkins received the benefit of the goods and/or made a misrepresentation of material fact relevant to the request or made a mistake about the assertions when TransUnion lacked any basis to make those statements from its May 8, 2023 letter.

46.     TransUnion cannot identify any facts to support a claim that Mrs. Jenkins made a request to block the Citibank account in error.

47.     TransUnion cannot identify any facts to support a claim that Mrs. Jenkins made a misrepresentation of material fact relevant to the request to block the Citibank account.

48.     TransUnion cannot identify any facts to support a claim that Mrs. Jenkins obtained possession of the goods, services, or money as a result of the transaction at issue.

49.     On May 12, 2023, Citibank responded to the ACDV that TransUnion had issued on its behalf by Teleperformance.  Citibank once again updated the account, and TransUnion once again simply repeated the information that Citibank instructed TransUnion to report about the account without conducting its own independent reinvestigation.

50.     TransUnion reported the results of the reinvestigation to Mrs. Jenkins dated May 13, 2023 by stating that the account was "VERIFIED AS ACCURATE AND UPDATED." By parroting the identity theft related information reported by Citibank, TransUnion ignored the additional information provided by Mrs. Jenkins and ignored the police report that she submitted with the dispute. TransUnion's actions prove that it is inaccurate for their corporate representative to represent that it will delete an identity theft related fraud account if a consumer provides TransUnion with a police report.

51.     On or about June 1, 2023, Mrs. Jenkins sent another credit dispute letter to TransUnion with supporting documentation. The supporting documentation included with this dispute letter was extensive and included additional account statements, a check demonstrating she paid off and closed the Citibank account, copies of text messages that she received regarding the account, correspondence with TransUnion and other credit reporting agencies, another copy of the Leesburg Police verification form, a copy of an FTC affidavit, and a copy of her Virginia's driver's license. TransUnion received this robust and full credit dispute package on June 5, 2023.

52.     After receiving the credit dispute package, TransUnion once again declined to remove the Citibank/Best Buy account from Mrs. Jenkins' TU credit report.

53.     After receiving a virtual mountain of information about the identity theft situation regarding the Citibank account including the Town of Leesburg Police Report form and an FTC affidavit signed under oath as well as a copy of Mrs. Jenkins' driver's license, TransUnion once again declined to block the reporting of the Citibank account.

54.     TransUnion issued a letter dated June 6, 2023 and made the following statement about the ID theft report and stated in part:

Re: ID Theft Report not valid

We received the identity theft block request you recently sent to TransUnion. TransUnion takes cases of identity theft very seriously and investigates all such allegations thoroughly. However, TransUnion at this time is unable to block the information you have identified for one or more of the following reasons:

- The request provided is missing essential personal identifying information or account specific information that would allow us to complete your request

Although we cannot accept the documentation you have submitted for the reason(s) detailed above under 605B of the FCRA, you may submit additional information or documentation supporting your request. For your convenience we have enclosed the TransUnion Identity Theft Victim Assistance Affidavit. Complete this affidavit to the best of your ability and mail it back to us as soon as possible at the address shown below.

55.     This response was demonstrably different from the prior one dated May 8, 2023, which made no representation that there was any missing information or that TransUnion could not complete the fraud block request. Despite the fact that this dispute letter had all the same information as the previous one and added even more information and documentation to supplement the original documentation, this time TransUnion claimed that the documentation was insufficient to allow it to correct the trade line or complete the fraud block.

56.     TransUnion's statement was a clear misrepresentation because the first page of the report complied with all the requirements of an identity theft report as detailed previously in the statement of facts and the second page of the Town of Leesburg identity theft report form clearly identified the account that was subjected to the identity theft:

**Property**

| Date | Code | Type | Make | Model | Description | Tag No. | Item No. |
|------|------|------|------|-------|-------------|---------|----------|
| 12/23/2022 | Stolen/Etc | Identity-Intangible | | | VICTIMS IDENTITY | | |
| 12/23/2022 | Stolen/Etc | Money | | | $2887 BEST BUY CREDIT | | |

**Seq #2**

| Property Codes: | Property Type: | Identity-Intangible | | Date Received: | 12/23/2022 |
|------------------|----------------|---------------------|---|----------------|------------|
| Stolen/Etc | | | Initial Value: $0.00 | | |
| Quantity: 1.000 | Unit of Measure: | Item | | | |
| Description: VICTIMS IDENTITY | | | | | |

57.     Next, TransUnion's letter dated June 6, 2023, once again claimed that Mrs. Jenkins lied and made a material misrepresentation of fact about the credit dispute:

Re: Your Identity Theft-Related Request

We received the identity theft block request you recently sent to TransUnion. TransUnion takes cases of identity theft very
seriously and investigates all such allegations thoroughly. However, TransUnion at this time declines to block the
information you have identified for one or more of the following reasons:

- In accordance with Section 605B of the FCRA, we have determined that your request has either a) been made in error; b) is
a misrepresentation of material fact relevant to the request to block and/or c) you have obtained possession of goods,
services or money as a result of the transaction issue.

58.     As with the first credit dispute letter, TransUnion had no basis to make any of these allegations against Mrs. Jenkins.

59.     On June 14, 2023, TransUnion once again parroted the results of the reinvestigation by reporting what Citibank stated about the account when it responded to the ACDV the previous day.  TransUnion once again stated that the account was verified as accurate and updated to allow the account to remain on Mrs. Jenkins TransUnion account.

60.     Mrs. Jenkins was frustrated and upset by TransUnion's actions because it not only refused to follow the law and delete the Citibank account from her TransUnion credit report, but it also personally attacked her character by stating that she misrepresented the circumstances of the identity theft.

61.     TransUnion's refusal to correct the inaccurate credit information had a chilling effect on Mrs. Jenkins' desire to use her credit.  TransUnion had previously sent her correspondence stating that TransUnion recommended that she not apply for credit during the dispute process.

62.     Mrs. Jenkins did apply for credit because she wanted to make some home repairs. Based upon information and belief, TransUnion issued inaccurate credit reports to Synchrony on July 28, 2023 and to Capital One Bank, NA on August 4, 2023.

## COUNT I
## Fair Credit Reporting Act
## 15 U.S.C. §1681i

63.     Plaintiff incorporates paragraphs one (1) through sixty-two (62) as if fully stated herein.

64.     Defendant TransUnion has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA.  TransUnion is liable to the plaintiff for damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681i by failing to comply with the enumerated statutory provisions when Mrs. Jenkins disputed the accounts as described in the factual averments.

65.     TransUnion's reinvestigation procedures do not comply with the stated statutory requirements of 15 U.S.C. §1681i(a)(1) through §1681i(a)(5).

66.     §1681i(a)(1)(A) provides that upon notice of the dispute that TransUnion is obligated to: "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

67.     §1681i(a)(2) obligates TransUnion to: "provide notification of the dispute to any person who provided any item of information in dispute."

68.     §1681i(a)(4) details the scope of TransUnion's reinvestigation under paragraph (1) and makes clear that TransUnion Information Solutions, Inc. "shall review and consider all relevant information submitted by the consumer…with respect to such disputed information."

69.     Finally, §1681i(a)(5) provides that after TransUnion has completed the forgoing steps and reinvestigation that if: "an item of information is found to be inaccurate or incomplete or cannot be verified," TransUnion must delete or modify the information.

70.     TransUnion violated 15 U.S.C. §1681i(a)(1) by its conduct related to Mrs. Jenkins' disputes that it received as identified in the factual averments.  With regards to the disputes, Mrs. Jenkins informed CitiBank/Best Buy of the account takeover and took significant actions to report the identity theft and account takeover.  Thereafter, Mrs. Jenkins informed TransUnion of the exact problem and on multiple occasions provided a detailed description of the account takeover and supporting documentation.

71.     As part of the reinvestigations, TransUnion negligently and recklessly ignored how its own data corroborated what Mrs. Jenkins told TransUnion about the account takeover as the payment data showed no balance from August 2022 up until the account takeover and fraudulent charges later that year.

72.     As part of the reinvestigations, TransUnion negligently and recklessly ignored the Leesburg Police Report verification form even though it met all the requirements of its own internal policies for validity and acceptance.

73.     As part of the reinvestigations, TransUnion negligently and recklessly made false and defamatory statements that Mrs. Jenkins had made material misrepresentations about the account takeover and that she received the benefit of the transactions.  All of TransUnion's false statements support the imposition of substantial punitive damages especially in light of the fact that TransUnion corporate representatives testify under oath that if a consumer files a police report and provides it to TransUnion then TransUnion will delete the account from the consumers' credit file.

74.     Based upon documents reviewed to date, and TransUnion's own disclosure to Mrs. Jenkins as to what it did do, TransUnion simply issued an ACDV to Citibank and did not conduct any other reinvestigation.

15

75.     Based upon information and belief, the only factual basis that TransUnion had at the time of Mrs. Jenkins' dispute reinvestigations were the ACDV responses back from Citibank.

76.     This type of reinvestigation is a reckless and/or negligent reinvestigation because TransUnion failed to conduct an independent reinvestigation as required by the FCRA.  In the disputes, Mrs. Jenkins identified the facts supporting the account take over, the Leesburg Police Report, and corroborating documents.  No reasonable reinvestigation would have failed to consider the facts, the police report, and the corroboration of her statements from TransUnion's own internal data.

77.     TransUnion sells products that claim to track and discover fraudulent accounts and transactions.  TransUnion does not use these available resources as part of its fraud consumer credit dispute reinvestigations.

78.     The FCRA requires that in conducting its reinvestigation under 15 U.S.C. §1681i(a)(1)(A) that a credit reporting agency must conduct the reinvestigation after receiving the consumer's credit dispute letter and unless it is able to verify said information TransUnion must delete the disputed account from the credit file as stated in 15 U.S.C. §1681i(a)(5)(A):

> In general If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or **cannot be verified**, the consumer reporting agency shall- (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer. 15 U.S.C. §1681i(a)(5)(A) (emphasis added)

79.     According to Black's Law Dictionary, the ordinary meaning of verify is, "to prove to be true; to confirm or establish the truth or truthfulness; to authenticate."

80.     Speaking on behalf of TransUnion, its corporate representative has admitted that TransUnion knows what the meaning of the work verify is.

81.     Based upon the circumstances, TransUnion knew that there was a problem with the data on Mrs. Jenkins' credit file, knew that CitiBank account had been taken over by an identity thief, and that Mrs. Jenkins had filed the Leesburg Police Report.

82.     Rather than undertake a more reasonable and detailed reinvestigation, TransUnion likely contracted for an outsourced third-party processor to issue a coded dispute to Citibank with TransUnion's computers "verifying" the information with no meaningful reinvestigation after receiving the ACDV response from the furnisher of the information.

83.     TransUnion also violated 15 U.S.C. §1681i(a)(4) after receiving Mrs. Jenkins disputes because it failed to review and consider the dispute information provided by Mrs. Jenkins including the representations that an identity thief took over the account, that she had filed the Leesburg Police Report, and she had never lived in Colorado.

84.     Because TransUnion uses outsourced third-party processors employed by Teleperformance, TransUnion incentivizes low-cost review at the expense of detailed review and consideration of the specifics of the disputes.  These processors are not provided with adequate training and supervision so that they can execute the functions of §1681i(a)(4) and (5).  Moreover, TransUnion does not directly monitor the actions of the processors or take disciplinary action against the workers not performing to acceptable standards.

85.     Rather than allow these processors to review and consider the consumer's dispute package together with the furnisher's ACDV response and make the required determination of §1681i(a)(5)(A), TransUnion automates that process and simply sends the ACDV response to its computer for automated updating and processing.

86.     As a result, TransUnion fails to conduct the required determination mandated by §1681i(a)(5)(A) and instead simply parrots whatever response the furnisher provides back to it in the ACDV exchange.

87.     TransUnion negligently and recklessly implemented a system with a total disregard for the requirements of §1681i(a)(5). Rather than allow these processors to review and consider the consumer's dispute package together with the furnisher's ACDV response and make the required determination of §1681i(a)(5)(A), TransUnion automates that process and simply sends the ACDV response to its computer for automated updating and processing.

88.     Had the TransUnion processors been properly trained and supervised, they would have followed the policy concerning police reports and deleted the disputed trade line information.

89.     TransUnion fails to conduct the required determination mandated by §1681i(a)(5)(A) and instead simply parrots whatever response the furnisher provides back to it in the ACDV exchange without reasonably considering what information it had in front of it and what it could see was the cause of the disputed data.

90.     If TransUnion determined that the information was too difficult to verify for purposes of the dispute, the proper response is to delete the information as unverifiable. Instead, TransUnion defaults to the furnisher's ACDV response no matter how ridiculous or inconsistent.

91.     Mrs. Jenkins suffered actual damage including time spent addressing the problem, improper denial of access to credit, inability to use her credit, inconvenience, as well as emotional distress damages with attendant physical manifestations. In addition, punitive damages are appropriate and necessary based upon TransUnion's reckless disregard for reviewing information submitted by consumers and issuing ACDVs.

92.     Punitive damages are also supported by TransUnion's misrepresentations regarding the account takeover and false assertion that Mrs. Jenkins received the goods or services related to the charges.

93.     Based upon information and belief and documents reviewed in other cases, TransUnion has a pattern and practice of failing to require the steps of a reasonable reinvestigation as required by the FCRA to circumvent its duties under the FCRA to conduct reinvestigations and keep the costs of dispute reinvestigations low.

94.     TransUnion has been on notice of its failure to reinvestigate properly by virtue of other cases and court opinions, and only the imposition of substantial punitive damages will change TransUnion's policies.   TransUnion also knows that outsourced automated data conformity reviews do not comply with its grave responsibilities to assure maximum possible accuracy of consumer credit information.

## COUNT II
### Fair Credit Reporting Act
### 15 U.S.C. §1681e(b)

95.     Plaintiff incorporates paragraphs one (1) through ninety-four (94) as if fully stated herein.

96.     Defendant TransUnion has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA.  TransUnion is liable to the plaintiff for damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the plaintiff's credit report.

97.     TransUnion willfully and/or negligently violated the Fair Credit Reporting Act at 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible

accuracy of information reported about Mrs. Jenkins when it provided a credit report to Capital One, Goldman Sachs Group, and Synchrony.  Discovery is necessary related to additional occasions in which TransUnion issued an inaccurate credit report.

98.     TransUnion's publishing of inaccurate information was a substantial factor in the stress and strain from knowing that she was unable to qualify for credit on terms and in the manner requested.  TransUnion allowed the inaccurate, misleading, derogatory CitiBank account information to remain on Mrs. Jenkins' credit report and included it in any credit information that her creditors had ordered from TransUnion.

99.     Mrs. Jenkins suffered actual damages including time spent addressing the problem, inconvenience, improper denial of access to credit, inability to obtain refinance of a mortgage, as well as emotional distress damages with attendant physical manifestations.  In addition, punitive damages are necessary based upon TransUnion's reckless disregard for reviewing information submitted by consumers and issuing ACDVs.

100.    Punitive damages are necessary because TransUnion has implemented a system and process that it knows results with inaccurate credit reports being sold to furnishers because TransUnion fails to invest the resources into enacting procedures to protect consumers or properly supervising these processors to ensure that they are carrying out and following TransUnion's existing procedures. TransUnion has implemented procedures to allow inaccurate data to remain in its system that cannot be verified if reinvestigated properly.  Only punitive damages can curb this type of conduct that operates in reckless disregard for accurate credit reports.

### **Prayer for Relief**

Wherefore, the Plaintiff prays that the Court award the following relief:

a)     Actual damages based upon Defendant's violations of the FCRA;

b)      statutory damages against Defendant's based upon violations of the FCRA;

c)      punitive damages based upon the violations of the FCRA

d)      costs and reasonable attorneys' fees incurred by the Plaintiff;

e)      prejudgment interest

f)      all other further relief that this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury as to all issues against all defendants.

Respectfully submitted,
Pamela Jenkins

By: Counsel

A. Hugo Blankingship, III, VSB 26424
Thomas B. Christiano, VSB 43940
Blankingship & Christiano, P.C.
11862 Sunrise Valley Dr. Suite 201
Reston, Virginia 20191
(571) 313-0412
Fax:(571) 313-0582